## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA (PHILADELPHIA)

| | | |
|---|---|---|
| **LESLIE MYLES** <br> 1059 Sherbune Avenue <br> St. Paul, MN 55104 | : <br> : <br> : <br> : | |
| And | : <br> : | |
| **BONUS PROPERTIES LLC** <br> 1059 Sherbune Avenue <br> St. Paul, MN 55104 | : <br> : <br> : <br> : | Civil Complaint No.: |
| Plaintiffs, | : <br> : <br> : | |
| v. | : <br> : | |
| **GREG PARKER** <br> 3020 Redner Street <br> Philadelphia, PA 19121 | : <br> : <br> : <br> : | **JURY TRIAL OF TWELVE (12) JURORS DEMANDED** |
| And | : <br> : | |
| **CICILY HAWES** <br> 3020 Redner Street <br> Philadelphia, PA 19121 | : <br> : <br> : <br> : | |
| And | : <br> : | |
| **GEONI PARKER** <br> 3020 Redner Street <br> Philadelphia, PA 19121 | : <br> : <br> : <br> : | |
| And | : <br> : | |
| **DANIEL PARKER** <br> 3020 Redner Street <br> Philadelphia, PA 19121 | : <br> : <br> : <br> : | |
| And | : <br> : | |
| **PARKER PROPERTIES UNLIMITED LLC** <br> 1401 N. 29th Street, Ste. 200 <br> Philadelphia, PA 19121 | : <br> : <br> : <br> : <br> : | |

1

|  |  |
|---|---|
| And | : |
|  | : |
| **AP CAPITAL LLC** | : |
| 3020 Redner Street | : |
| Philadelphia, PA 19121 | : |
|  | : |
| And | : |
|  | : |
| **G PARKER UNLIMITED LLC** | : |
| 1401 N. 29th Street | : |
| Philadelphia, PA 19121 | : |
|  | : |
| And | : |
|  | : |
| **PARKER UNLIMITED PROPERTIES LLC** | : |
| 1401 N. 29th Street | : |
| Philadelphia, PA 19121 | : |
|  | : |
| And | : |
|  | : |
| **JOHN DOES 1-10**, | : |
|  | : |
| Defendants. | : |

## CIVIL ACTION COMPLAINT

**I.   INTRODUCTION**

1.  Plaintiffs, Leslie Myles and Bonus Properties LLC, bring this action against Defendant, Greg Parker and his associates, family members and businesses who operate a unified corrupt organization under the Racketeer Influenced and Corrupt Organizations Act in a simple fraud scheme.

2.  The RICO Enterprise marketed itself to budding investors seeking to make a start in real estate investing through a variety of marketing schemes, initially in the Greater Philadelphia area and then throughout the United States. The RICO Enterprise used Defendant, Greg Parker's perceived status as a "real estate mogul" in a you-can-do-it-too educational scheme, that was in

fact a front used to induce students into purchasing real estate properties from the RICO Enterprise.

3. However, in reality, the RICO Enterprise, after gaining the trust of its victims, fraudulently accepted sums of money and then would give the victim the run-around for months or years.

4. It is believed and therefore averred that the RICO Enterprise continues to solicit victims for the purpose of gaining those victims' trust in order to continue its simple fraud scheme.

5. Plaintiffs now bring the RICO claim, as well as a number of state law claims, for the fraudulent and deceptive conduct of the RICO Enterprise.

## II. JURISDICTION & VENUE

6. Plaintiffs incorporate the foregoing paragraphs as if set forth at length herein.

7. This Honorable Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 as this matter involves a federal question, as well as pursuant to 18 U.S.C. §§ 1961-1968 for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") as Defendants have, directly and/or indirectly, made use of the means and/or instrumentalities of interstate commerce in connection with the transactions, acts, practices and courses of business alleged herein.

8. This Honorable Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

9. Venue is proper in this District as (i) one or more defendants reside within this District; and (ii) one or more of the transactions, acts, practices and courses of business alleged herein occurred within this District.

10. All Defendants performed substantial business within this District, as described herein, thereby knowingly subjecting themselves to the jurisdiction of this Honorable Court.

**III.    PARTIES**

11. Plaintiffs incorporate the foregoing paragraphs as if set forth at length herein.

12. Plaintiff, Leslie Myles, is an adult individual currently residing at the above-captioned address.

13. Plaintiff, Bonus Properties LLC, is a is a limited liability company existing by virtue of and operating under the laws of the State of Minnesota, with a primary place of business at the above-captioned address. At all material times, Plaintiff, Leslie Myles was the sole owner-operator of Plaintiff, Bonus Properties LLC.

14. Defendant, Greg Parker, is an adult individual currently residing at the above-captioned address and a member of the RICO Enterprise. Defendant, Greg Parker directs and controls the RICO Enterprise.

15. Defendant, Cicily Hawes, is an adult individual currently residing at the above-captioned address and a member of the RICO Enterprise.

16. Defendant, Geoni Parker, is an adult individual currently residing at the above-captioned address and a member of the RICO Enterprise.

17. Defendant, Danielle Parker, is an adult individual currently residing at the above-captioned address and a member of the RICO Enterprise.

18. Defendant, Parker Properties Unlimited LLC, is a limited liability company existing by virtue of and operating under the laws of the Commonwealth of Pennsylvania, with a registered place of business at the above-captioned address. Upon information and belief, Defendant, Greg Parker is the sole owner of Defendant, Parker Properties Unlimited LLC.

19. Defendant, AP Capital LLC, is a limited liability company existing by virtue of and operating under the laws of the Commonwealth of Pennsylvania, with a registered place of business at the above-captioned address. Upon information and belief, Defendant, Greg Parker is the sole owner of Defendant, AP Capital LLC.

20. Defendant, G Parker Unlimited LLC, is a limited liability company existing by virtue of and operating under the laws of the Commonwealth of Pennsylvania, with a registered place of business at the above-captioned address. Upon information and belief, Defendant, Greg Parker is the sole owner of Defendant, G Parker Unlimited LLC.

21. Defendant, Parker Unlimited Properties LLC, is a limited liability company existing by virtue of and operating under the laws of the Commonwealth of Pennsylvania, with a registered place of business at the above-captioned address. Upon information and belief, Defendant, Greg Parker is the sole owner of Defendant, Parker Unlimited Properties LLC.

22. Defendants, John Does 1-10, is a moniker/fictitious name for individuals and entities currently unknown but will be substituted when known, as affiliated, associated or liable hereunder for the reasons set forth below or inferred therefrom. Each of these parties are incorporated as Defendants in each and every count and averment listed above and below. Upon information and belief, Defendants, John Does, were agents, servants, workmen, employees, affiliates, and/or co-conspirators of Co-Defendant(s) and/or members of the RICO Enterprise, liable to Plaintiffs hereunder.

23. The term "RICO Enterprise" herein refers collectively to Defendants, Greg Parker, Cicily Hawes, Geoni Parker, Danielle Parker, Parker Properties Unlimited LLC, AP Capital LLC, G Parker Unlimited LLC, Parker Unlimited Properties LLC, and John Does 1-10.

**IV.   OPERATIVE FACTS**

24.     Plaintiffs incorporate the foregoing paragraphs as if set forth at length herein.

25.     Defendant, Greg Parker holds himself out to the public as a "real estate mogul" who has the ability to transform individuals through group and individual real estate seminars into successful real estate investors. In fact, Defendant, Greg Parker specifically holds himself as a self-made "millionaire".

26.     Defendant, Greg Parker hosts fee-based, group seminars on real estate investing through which Defendant, Greg Parker identifies individuals, i.e. victims, for one-on-one classes and investment schemes.

27.     Defendant, Greg Parker uses a host of legal entities to shield himself from his fraud victims, including, Defendants, Parker Properties Unlimited LLC, AP Capital LLC, G Parker Unlimited LLC, Parker Unlimited Properties LLC, as well as, upon information and belief, Non-Parties, Maybach Construction LLC, Diamante Enterprises LLC, and Rehab Queen Ohio, LLC. It is believed that discovery will reveal evidence that each of the foregoing non-party-entities are additional members of the RICO Enterprise identified herein.

28.     Defendant, Greg Parker has also involved his family members and employees, including Defendants, Cicily Hawes, Geoni Parker, and Danielle Parker, in the RICO Enterprise, all of whom are believed to have actual knowledge of Defendant, Greg Parker's fraudulent activities, yet work to further such activities.

29.     Defendant, Greg Parker has been a guest lecturer at Temple University, as well as seminars hosted by third-parties, concerning real estate investing. Defendant, Greg Parker was also featured in an article by Black Enterprise[1] and has been a guest on podcasts

---

[1] *[Passion to Purpose] Meet Real Estate Investor and Community Builder Greg Parker.* Daron Pressley, November 12, 2016. Black Enterprise Website, accessed on January 19, 2023, at https://www.blackenterprise.com/meet-real-estate-investor-greg-parker/.

30. Defendant, Greg Parker has been a guest lecturer at Temple University, as well as seminars hosted by third-parties, concerning real estate investing. Defendant, Greg Parker was also featured in an article by Black Enterprise[2] and has been a guest on podcasts.

31. In fact, in or around 2018, Plaintiff, Leslie Myles first learned of Defendant, Greg Parker when he appeared on a podcast show, "Earn Your Lesuire", in which Defendant, Greg Parker spoke about financial literacy and his "real estate rehab program".

32. Plaintiff, Leslie Myles researched Defendant, Greg Parker via his "Big Bizzneesss" (sic) Instagram and website. Thereafter, Plaintiff, Leslie Myles began communicating with Defendant, Greg Parker regarding his "real estate rehab program".

33. Defendant, Greg Parker invited Plaintiff, Leslie Myles to visit him and his wife, Defendant, Danielle Parker, in Miami, Florida as a large mansion that Defendant, Greg Parker allegedly owns. Plaintiff, Leslie Myles was naturally impressed and left with the (false) impression that Defendant, Greg Parker was a successful and honest real estate mogul.

34. During the various conversations, Defendants, Greg Parker and Danielle Parker represented to Plaintiff, Leslie Myles "real estate rehab program" process consisted of:

   a. The investor would transfer to Defendant, Greg Parker a given sum of funds for the purchase of a rental property without the investor's knowledge of the specific rental property;

   b. Defendant, Greg Parker would then select a rental property from Defendant, Greg Parker "exclusive list" to sell to the investor for the given sum of funds;

---

[2] *[Passion to Purpose] Meet Real Estate Investor and Community Builder Greg Parker.* Daron Pressley, November 12, 2016. Black Enterprise Website, accessed on January 19, 2023, at https://www.blackenterprise.com/meet-real-estate-investor-greg-parker/.

      c. Defendant, Greg Parker, through one of his entities, would fully renovate the property in exchange for an additional sum in a reasonable period of time.

35. Defendants, Greg Parker and Danielle Parker also explained to Plaintiff, Leslie Myles that they could provide hard-money financing if needed.

36. On or about February 18, 2019, Plaintiff, Leslie Myles paid Defendant, Greg Parker a $7,000 "entry fee" to join Defendant, Greg Parker "real estate rehab program".

37. Depending upon Defendant, Greg Parker's "expert" advice, Plaintiff, Leslie Myles agreed to purchase a rental property from Defendant, Greg Parker's "exclusive list" that would be located in East Cleveland, Ohio; specifically, a multiplex residential property.

38. Defendant, Greg Parker insisted that the purchase price for the to-be-determined multiplex residential property be advanced to Defendant, Greg Parker *before* Defendant, Greg Parker identified the specific property being purchased.

39. On or about February 25, 2019, Plaintiff, Leslie Myles transferred $86,000, at the direction of Defendant, Greg Parker, towards the purchase of a to-be-determined multiplex residential property in East Cleveland, Ohio.

40. On or about February 26, 2019, Plaintiff, Leslie Myles transferred an additional $14,000, at the direction of Defendant, Greg Parker, towards the purchase of a to-be-determined multiplex residential property in East Cleveland, Ohio.

41. In or around April 2019, Defendant, Greg Parker selected a property located at and known as 1818 Hastings Avenue, East Cleveland, OH 44112 (the "Property") to sell to Plaintiff, Leslie Myles.

42. Defendant, Greg Parker contacted Plaintiff and informed Plaintiff of the identity of the Property. Defendant, Greg Parker represented to Plaintiff that he could fully renovate the Property, in accordance with all applicable codes, within six months for the sum of $130,000.

43. On or about April 25, 2019, Plaintiff, Leslie Myles, on behalf of her business, Plaintiff, Bonus Properties LLC, executed a Real Estate Purchase Agreement with Defendant, Parker Properties Unlimited LLC for the purchase and renovation of the Property. *See* Exhibit A ("Purchase Agreement").

44. Defendant, Greg Parker did not disclose any information regarding the condition of the Property to Plaintiff prior to the execution of the Purchase Agreement.

45. Plaintiff did not have an opportunity to see, let alone inspect, the Property prior to the purchase.

46. The Purchase Agreement specifically called for a total purchase price, including the full renovation, of $230,000. *See* Exhibit A, Page 1.

47. The Purchase Agreement was back-dated for a settlement date of November 16, 2018 even though it was executed on April 25, 2019. *See* Exhibit A.

48. The Purchase Agreement did not include any details regarding the renovations contracted to be performed. *See* Exhibit A.

49. Over the course of the following ten months, Plaintiff transferred to Defendants the total sum of $130,000 for the full renovation of the Property, in installment payments as directed by Defendants, Greg Parker and Danielle Parker.

50. In fact, Defendant, Danielle Parker worked with Plaintiff when Plaintiff made certain installment payments via credit card. Plaintiff later learned that after Plaintiff approved

payments, Defendant, Danielle Parker fraudulently added credit card fees without Plaintiff's knowledge or approval, which total $3,210.

51. Upon information and belief, Parker Properties Unlimited, LLC purchased the Property from Jill Giacomo on or about November 16, 2018 for the sum of One Dollar (per the related deed filed with the County Of Cuyahoga).

52. Unbeknownst to Plaintiff, on or about August 28, 2019, the City of East Cleveland's Department of Building & Housing sent two letters to Defendant, Parker Properties Unlimited LLC regarding the Property. *See* Exhibit B.

53. The first letter was a "Notice of Code Violation Unsafe Structure Final Notice" that declared the Property "an unsafe structure… unfit for human occupancy." *See* Exhibit B, Page 1. "This structure is a health and safety hazard and is otherwise dangerous to human life in its existing condition." *Id.* In fact, the letter further explained that, "[i]f said structure is not repaired the owner is hereby ordered to demolish said structure within thirty (30) days of the date of delivery or mail of this notice." *Id.*

54. The second letter was a "Pre-Sale Certificate of Use, Occupancy and Inspection" detailing various code violations with the Property. *See* Exhibit B, Page 2. Among other things, the second letter also stated that a certificate of inspection was required by the City of East Cleveland prior to the transfer of the Property. *Id.*

55. Plaintiff did not learn of these letters until years later.

56. On several occasions, Plaintiff contacted Defendant, Greg Parker regarding visiting the Property to view the progress of renovations. On each occasion, Defendant, Greg Parker travelled to the Property with workers to put on a show of performing renovations.

57. However, in or around 2022, Plaintiff talked to neighbors near the Property and learned that the renovations would only occur on those infrequent days when Plaintiff visited, i.e. Defendant, Greg Parker and the workers only showed up on the day of the visit and then left immediately after Plaintiff.

58. In or around November 2019, Defendant, Greg Parker uploaded a video to his Instagram account showing Defendants, Greg Parker and Cicily Hawes touring the Property while construction crews appeared to perform carpentry work. As a result, Plaintiff believed the construction was progressing. However, all such work being performed was simply to put on a show and no real construction activities occurred. Rather, this show was a further effort by Defendant, Greg Parker to entice further victims to believe that he was legitimate.

59. In or around April 2020, Defendant, Greg Parker represented to Plaintiff that the rehabilitation of the Property would be completed within six (6) months.

60. In or around Spring 2020, Defendant, Greg Parker contacted Plaintiff regarding the Property and instructed Plaintiff that security gates needed to be purchased and installed on the Property on each window and door. Specifically, Defendant, Greg Parker falsely represented to Plaintiff that new construction materials were installed at the Property and Defendant, Greg Parker was concerned that the new construction materials would be stolen.

61. Defendant, Greg Parker represented to Plaintiff that Defendant, Geoni Parker owned a security gates supply and install company and provided Plaintiff with Defendant, Geoni Parker's contact information.

62. At Defendant, Geoni Parker's direction, Plaintiff wired $2,500 to Defendant, Geoni Parker for the purchase and installation of the security gates on each window and door on the first floor of the Property, i.e. approximately twenty gates.

63. In or around August 2020, Plaintiff asked Defendant, Greg Parker whether the security gates were installed at the Property but did not receive a response.

64. Despite paying for approximately twenty gates, security gates were only installed on one door and two windows. It is believed and therefore averred that Defendant, Geoni Parker pocketed the remaining funds. No construction materials were ever delivered to, let alone installed at, the Property.

65. In or around September 2020, Plaintiff expressed to Defendant, Greg Parker her concerns with the status of the rehabilitation of the Property. In response, Defendant, Greg Parker falsely represented that his "Amish guys" had been at the Property everyday for three weeks.

66. In or around October 2020, Plaintiff made multiple requests to Defendant, Greg Parker for updates, photographs, and videos of the progress with the rehabilitation of the Property. However, Defendant, Greg Parker continuously provided excuses for his delay in sending them.

67. In or around late October 2020, Plaintiff and Defendant, Greg Parker began have discussions regarding an exchange of properties as a result of the horrible condition of the Property and Defendants failure to renovate it.

68. In or around early November 2020, Defendant, Greg Parker represented to Plaintiff that he would transfer a renovated six-unit property to Plaintiff in exchange for the Property. However, Defendant, Greg Parker did not identify the new property.

69. Over the course of the following months, it became clear that Defendant, Greg Parker was not going to follow-through on the foregoing exchange. Instead, Defendant, Greg Parker committed to completing the renovation of the Property.

70.     Between March 2021 and June 2021, Plaintiff regularly texted Defendant, Greg Parker asking for an update on the renovation of the Property, specifically when it would start back up. However, Defendant, Greg Parker was substantively non-responsive.

71.     Between March 2021 and September 2021, Plaintiff repeatedly requested Defendant, Greg Parker meet her at the Property. Each time, Defendant, Greg Parker would push the date to do so out a few more weeks.

72.     In or around early June 2021, Plaintiff requested that Defendant, Greg Parker refund Plaintiff her money. In response, Defendant, Greg Parker falsely represented that the Property was currently being renovated.

73.     In or around July 2021, Plaintiff again requested that Defendant, Greg Parker refund Plaintiff her money. In response, Defendant, Greg Parker falsely represented that renovations on the Property would begin *soon*, tacitly admitting that the prior representations that renovations were ongoing was false.

74.     In or around August 2021, Defendant, Greg Parker falsely represented that renovations on the Property would be completed in September.

75.     In or around September 2021, while Plaintiff was visiting the Property, Plaintiff learned for the first time that the City of East Cleveland was threatening to demolish the Property.

76.     Plaintiff met with City of East Cleveland in or around September 2021 and obtained the two letters sent to Defendants in August 2019.

77.     As a result of learning of the two letters sent by City of East Cleveland, Plaintiff reached out to Defendant, Greg Parker regarding the status of the Property. In response, Defendant, Greg Parker admitted that he knew that Defendants were required to obtain appropriate plans, permits, and inspections, all of which had not been done.

78. As a result, Plaintiff again requested Defendant, Greg Parker to refund Plaintiff the $130,000 paid for the renovation of the Property that had not been performed. In September 2021, Defendant, Greg Parker agreed to refund Plaintiff the $130,000 paid for the renovation of the Property

79. Between September 2021 and December 2022, Plaintiff repeatedly requested the status of the payment. Defendant, Greg Parker: (i) confirmed payment would be forthcoming; (ii) directed Plaintiff to call "the office"; and/or (iii) ignored Plaintiff.

80. Between Spring 2019 and September 2021, Plaintiff also communicated with Defendant, Cicily Hawes regarding the status of the renovations to the Property. Defendant, Cicily Hawes also made numerous false representations to Plaintiff that the renovations to the Property were occurring despite knowing that such representations were false.

81. Between September 2021 and December 2022, Plaintiff also communicated with Defendant, Cicily Hawes regarding the status of the return of the $130,000 payment for renovations. Defendant, Cicily Hawes also made numerous false representations to Plaintiff that the payment was "on the schedule" and would be sent "next week" despite knowing that such representations were false.

82. To date, Defendants have failed to return the $130,000 payment that Plaintiff made towards the purchase of the renovated Property.

83. Currently, the Property is in a complete state of disrepair, open to the elements and is structurally unsound. In fact, when it rains, the rain literally falls straight through to the bottom floor.

V.    **CAUSES OF ACTION**

## COUNT I
### Violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO")

*Plaintiffs v. All Defendants*

84. Plaintiffs incorporate the foregoing paragraphs as if set forth at length herein.

85. Plaintiffs are "persons" as that term is defined for purpose of the RICO Act. *See* 18 U.S.C. §1961(3).

86. Defendants, Greg Parker, Cicily Hawes, Geoni Parker, Danielle Parker, Parker Properties Unlimited LLC, AP Capital LLC, G Parker Unlimited LLC, Parker Unlimited Properties LLC, and John Does 1-10 are "persons" as that term is defined for purpose of the RICO Act. *See* 18 U.S.C. §1961(3).

87. Defendants, Greg Parker, Cicily Hawes, Geoni Parker, Danielle Parker, Parker Properties Unlimited LLC, AP Capital LLC, G Parker Unlimited LLC, Parker Unlimited Properties LLC, and John Does 1-10 constitute an "enterprise" as that term is defined for purpose of the RICO Act. *See* 18 U.S.C. §1961(4).

88. Defendants, Greg Parker, Cicily Hawes, Geoni Parker, Danielle Parker, Parker Properties Unlimited LLC, AP Capital LLC, G Parker Unlimited LLC, Parker Unlimited Properties LLC, and John Does 1-10 acted together to form an association-in-fact for the common and continuing purpose to defraud persons through a simple fraud scheme, including but not limited to Plaintiffs, as well as four plaintiffs in *Raymond Schaffer, et al. v Greg Parker, et al* (EDPA No. 21-02171), one plaintiff in *Damon L. Patterson v. Greg Parker, et al* (EDPA No. 22-00463), two plaintiffs in *Richard Jenkins, Jr., et al. v. Greg Parker, et al* (EDPA No. 22-04697), two plaintiffs in *Lawrence Wesley, et al. v. Greg Parker, et al* (EDPA No. 22-04699), among others.

89. Defendants, Greg Parker, Cicily Hawes, Geoni Parker, Danielle Parker, Parker Properties Unlimited LLC, AP Capital LLC, G Parker Unlimited LLC, Parker Unlimited Properties LLC, and John Does 1-10 formed an enterprise and association-in-fact with an ascertainable authority

structure that was separate and distinct from any formal corporate structure, i.e. the RICO Enterprise.

90. The RICO Enterprise, knowingly, fraudulently, deceptively, and unlawfully engaged in the affairs of the RICO Enterprise through a "pattern of racketeering activities", that is believed to be ongoing and continuous, as that term is defined for purpose of the RICO Act. *See* 18 U.S.C. §1961(1).

91. It is believed and therefore averred that the RICO Enterprise's actions, as described herein, are acts that are part of the RICO Enterprise's regular way of doing business. It is believed and therefore averred that the RICO Enterprise continues to solicit victims through its group and individual seminars, Instagram, and website for the purpose of gaining those victims' trust in order to continue its simple fraud scheme in the same fashion as described herein.

92. The RICO Enterprise engaged in a pattern of indictable conduct, including conduct indictable under 18 U.S.C. 1341 (relating to mail fraud), 18 U.S.C. 1343 (relating to wire fraud), 18 U.S.C. 1952 (relating to racketeering), 18 U.S.C. § 1957 (relating to engaging in monetary transactions in property derived from specified unlawful activity) in that the RICO Enterprise made use of the facilities of interstate commerce in furtherance of simple fraud scheme, including, but not limited to, Plaintiffs herein. Plaintiff is aware of similar allegations asserted in the matters of *Raymond Schaffer, et al. v Greg Parker, et al* (EDPA No. 21-02171), *Damon L. Patterson v. Greg Parker, et al* (EDPA No. 22-00463), *Richard Jenkins, Jr., et al. v. Greg Parker, et al* (EDPA No. 22-04697), and *Lawrence Wesley, et al. v. Greg Parker, et al* (EDPA No. 22-04699).

93. The RICO Enterprise engages in and affects interstate commerce, including, but not limited to, in the State of Ohio, State of Wisconsin, State of Minnesota, and the Commonwealth of Pennsylvania.

94. As a result of the RICO Enterprise's pattern of racketeering activities, the RICO Enterprise defrauded Plaintiffs to their financial detriment.

95. Pursuant to 18 U.S.C. § 1964, Plaintiffs are entitled to treble damages, reasonable attorneys' fees, and costs of suit for the violations committed.

## COUNT II
### Fraud
*Plaintiffs v. Defendants, Greg Parker & Danielle Parker*

96. Plaintiffs incorporate the foregoing paragraphs as if set forth at length herein.

97. Defendants, Greg Parker and Danielle Parker represented to Plaintiffs that Defendants would lawfully sell a triplex to Plaintiffs and renovate it in a timely manner.

98. However, at the time of the representation and subsequent purported transaction, Defendants, Greg Parker and Danielle Parker did not intend to renovate the Property despite accepting payment therefore.

99. Following the transaction, Defendants, Greg Parker and Danielle Parker engaged in a series of false representations in an effort to cover-up their fraud and delay Plaintiffs from taking action.

100. Plaintiff reasonably and justifiably relied on Defendants, Greg Parker and Danielle Parker's representations, described *supra*.

101. Plaintiff, relying on Defendants, Greg Parker and Danielle Parker's representations, transferred $230,000 to an account identified by Defendants to Plaintiffs' financial detriment.

102. As a result of the foregoing, Plaintiffs have suffered significant financial harm, including the loss of the funds, incurred unnecessary travel expenses, and lost profits; as well as the emotional distress caused thereby.

## COUNT III
### Breach of Contract
*Plaintiff, Bonus Properties LLC v. Defendant, Parker Properties Unlimited LLC*

103. Plaintiffs incorporate the foregoing paragraphs as if set forth at length herein.

104. Plaintiff, Bonus Properties LLC entered into a contract with Defendant, Parker Properties Unlimited LLC for the purchase of the Property, fully renovated, for $230,000. *See* Exhibit A.

105. Defendant, Parker Properties Unlimited LLC breached the foregoing contract by:

   a. Failing to transfer to Plaintiff a fully renovated property;

   b. Failing to renovate the Property; and,

   c. Other breaches of the contract that may be identified during the course of discovery.

106. As a result of the foregoing, Plaintiffs have suffered significant financial harm, including the loss of the funds, incurred unnecessary travel expenses, and lost profits; as well as the emotional distress caused thereby.

**VI.   PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, Leslie Myles and Bonus Properties LLC, by and through their undersigned counsel, hereby respectfully demands judgment in their favor and against Defendants, Greg Parker, Cicily Hawes, Geoni Parker, Danielle Parker, Parker Properties Unlimited LLC, AP Capital LLC, G Parker Unlimited LLC, Parker Unlimited Properties LLC, and John Does 1-10, for an amount in excess of $500,000, including all compensatory and consequential damages, punitive damages, plus statutory damages, including treble damages,

attorney fees, and costs, all applicable interests, as well as any further and other relief that this Honorable Court deems necessary and just, including the rescission of the subject contract.

Respectfully Submitted,

| **WEISBERG LAW** | **SCHAFKOPF LAW, LLC** |
|---|---|
| */s/ L. Anthony DiJiacomo, III* | */s/ Gary Schafkopf* |
| Matthew B. Weisberg | Gary Schafkopf |
| Attorney Id. No. 85570 | Attorney Id. No. 83362 |
| L. Anthony DiJiacomo, III | 11 Bala Ave |
| Attorney Id. No. 321356 | Bala Cynwyd, PA 19004 |
| 7 South Morton Ave. | 610-664-5200 Ext 104 |
| Morton, PA 19070 | Fax: 888-283-1334 |
| 610-690-0801 | |
| Fax: 610-690-0880 | *Attorneys for Plaintiffs* |